Joel CIPES, d/b/a Joel Cipes
Photography, Plaintiff,

v.

MIKASA, INC., Defendant.

No. CIV.A.02–12370–NMG.

United States District Court,
D. Massachusetts.

Nov. 30, 2004.

Matthew K. Ryan, Frommer Lawrence & Haug, New York City, for Plaintiff.

Andrew D. Epstein, Barker, Epstein & Loscocco, Boston, MA, Leonard J. Santisi, Frommer Lawrence & Haug LLP, San Diego, CA, Howard J. Susser, Burns & Levinson, Boston, MA, Daniel B. Trinkle, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This copyright infringement case involves allegations by Joel Cipes ("Cipes") that Mikasa, Inc. ("Mikasa") unlawfully used for commercial purposes, without license or permission, photographs taken by Cipes and registered by him with the Copyright Registration Office and/or failed to pay Cipes the requisite licensing fees for use of the photographs. The complaint contains eight counts, seven for copyright infringement and one for breach of contract.

### I. *Background*

Cipes is a professional photographer who took photographs of Mikasa products, such as tableware and glasses, at the request of Mikasa. He would then sell to

Mikasa licenses for limited use of the photographs, such as in bridal magazine advertisements. Cipes claims that Mikasa exceeded the scope of the license by using the photographs in other manners and that it failed to compensate him for such use.

On July 8, 2002, the Copyright Office granted Cipes Copyright Registration VAu 539–991 ("the '991 Registration") for a collection of photographs that were registered as being "unpublished". Mikasa alleges that the Registration is invalid, however, because many of the photographs had, in fact, been displayed by Mikasa in bridal brochures and on its website prior to the time of registration.

Also on July 8, 2002, the Copyright Office granted Cipes Copyright Registrations VA 1–140–474 through VA 1–140–479 ("the '474–'479 Registrations") for collections of photographs that were registered as being "published". Mikasa alleges that those Registrations are invalid because 1) within each collection there were photographs that were published during different calendar years, in violation of federal regulations, and 2) several of the photographs were registered multiple times because they were inadvertently contained in more than one collection.

Mikasa now moves for summary judgment arguing that the above Registrations are invalid and that the Court must, therefore, dismiss the counts relating to them for lack of jurisdiction. Cipes, on the other hand, admits that several registration errors occurred but argues that, because none of the errors was fraudulent or material to the interests of Mikasa, summary judgment is not warranted under First Circuit precedent.

## II. *Legal Analysis*

### A. **Summary Judgment Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. **Analysis**

■ Pursuant to 17 U.S.C. § 411, "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim

has been made in accordance with this title." Thus, registration by the author is a prerequisite to the filing of a copyright infringement action. *Id.*[1] Accordingly, if the Plaintiff's Registrations are invalid, his present claims must be dismissed.

### 1. *Validity of the '474–'479 Registrations*

■ Mikasa challenges the validity of the '474–'479 Registrations of published collections of photographs on the grounds that 1) within each collection, there were photographs which were not published during the same calendar year, as required by 37 C.F.R. § 202.3(b)(9)(iii), and 2) several photographs in those collections were registered in more than one collection in violation of 37 C.F.R. § 202.3(b)(10) which prohibits duplicate registrations.

Cipes concedes that the above errors were present in his applications. Pursuant to 37 C.F.R. § 202.3(b)(9)(iii), a group of published photographs may be registered as a collection only if they were all published in the same year. Cipes took many pictures of Defendant's products over a period of years and occasionally licensed their use to Mikasa for use in bridal magazines, thus rendering them "published". *See* 17 U.S.C. § 101. In 2002, Cipes registered those photographs but since many of the photographs were similar in appearance (i.e. depicted the same or similar products)and had been taken and published over a number of years, Cipes accidently misstated the year of publication of some of them on his applications for registration.

Likewise, as painstakingly described by Mikasa, Cipes inadvertently included several of the photographs in more than one collection, in violation of 37 C.F.R.

§ 202.3(b)(10) which prohibits duplicate registrations. Therefore, there are clear errors in Plaintiff's Registrations and the issue becomes whether those errors render them invalid.

The First Circuit Court of Appeals addressed the issue of whether an application error will invalidate a registration in *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147 (1st Cir.1994). In *Data General*, Plaintiff Data General commenced a copyright infringement action alleging that Grumman had infringed Data General's rights in a certain piece of computer source code. *Id.* at 1157–58. During the course of trial, it became apparent that Data General's copyright registration was flawed because there were several inadvertent errors contained in the source code on deposit at the Copyright Office. *Id.* Thus, Grumman argued that the registration was invalid and dismissal was necessary. *Id.*

The district court ruled that the registrations were valid despite the errors and the Court of Appeals affirmed, recognizing that "[i]t is well established that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration." *Id.* at 1161 (citations omitted). The Court of Appeals approved of the district court's instruction to the jury that "discrepancies in dates, filing the wrong pages, or partial pages, and similar errors, do not impeach the validity of the copyright." *Id.* at 1161 n. 21. Thus, Data General's flawed registration was held to be valid. *Id.* at 1161.

Although *Data General* involved a *deposit* error, rather the an *application* error, the Court of Appeals stated that the same principles would apply to errors of

---

1. Of course, copyright registration is irrelevant to the question of whether a valid copyright exists because a copyright exists as soon

as copyrightable subject matter is "fixed in any tangible medium of expression". 17 U.S.C. § 102(a).

either sort. *Id.* at 1161–62 (rejecting Defendant's argument that different rules should govern errors in deposit and the application). Mikasa's argument that *Data General* does not govern the present issue is therefore unpersuasive and the relevant inquiry concerns whether Cipes's errors were immaterial and inadvertent. Because it is undisputed that the errors were committed inadvertently, the issue is limited to their materiality to Mikasa. There are several reasons why the errors in Cipes's applications are not material to Mikasa.

First, "[i]n general, an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application." *Id.* (citation omitted). As Cipes points out, the Copyright Office provides a procedure and a form for the correction of errors of the kinds at issue here (errors in dates and duplicate registration). In its memorandum, Cipes states that he is already undertaking to correct the errors and that he does not know of any reason that the corrected applications will be rejected. Thus, because it does not appear that any of Cipes's errors is fatal to his Registrations, the errors are immaterial under *Data General*. *Id.*

Second, there is no allegation that Mikasa was prejudiced by the errors at issue here. *See id.* at 1161 n. 24 (noting that, before a registration is declared invalid based on a registration error, courts generally require that either defendant was prejudiced by the error or that it was intentional). Indeed, Mikasa's own pleadings exhaustively demonstrate that the registration errors were apparent to it and, in some cases, more so than to Cipes. A chief purpose of the registration process is "to identify the work in which the applicant claims a copyright." *Id.* at 1162. In this case, that objective has not been compromised by Cipes's errors because Mikasa was well aware of Cipes rights in the subject photographs. Therefore, the '474–'479 Registrations will not be held invalid and Mikasa's motion for summery judgment pertaining to them will be denied.

### 2. *Validity of the '991 Registration*

Mikasa also moves for summary judgment with respect to the '991 Registration and argues that Cipes mistakenly or fraudulently registered the subject photographs as part of an "unpublished" collection despite the fact that he knew the photographs had been distributed by Mikasa prior to registration.

Federal regulations set forth different procedures for registering different kinds of works and the appropriate procedure depends, in part, on whether the work has been published. *See* 37 C.F.R. 202.3(b). The different procedures have different deposit requirements. *See id.* Consequently, a collection of works that is erroneously registered as being unpublished cannot generally be transformed to a properly registered published collection by a supplemental filing with the Copyright Office. Rather, a new registration as a published collection is required. Following that logic, Mikasa argues that, because the subject photographs of Registration '991 had appeared on Mikasa's website and in its bridal magazines prior to when Cipes registered them, the photographs should have been registered as a published collection.

■ Defendant's arguments are flawed, however, because they all rely on the erroneous premise that the photographs comprising the '991 Registration should have been considered "published" at the time of registration. In reality, however, because an unauthorized user of a work is incapable of publishing it within the meaning of the Copyright Act, the subject photo-

graphs were properly regarded as unpublished at the time of registration.

"Publication" is defined as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. The exclusive right to publish is reserved to the *author*. 17 U.S.C. § 106(3)("the owner of copyright under this title has the exclusive rights to ... distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"). Accordingly, an unauthorized user lacks the right to publish an author's work and any attempt to do so constitutes copyright infringement. *Id.*

Allowing an unauthorized user the ability to change the status of an author's work (i.e. from unpublished to published) would run contrary to the intent of Congress to endow the upon the author exclusive right to distribute. *See id. See also* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 4.04 at 4–22 to 4–23 (2002). As a result, an unauthorized user lacks not only the right, but also the ability to "publish" an author's work and any attempt to do so is ineffective. *Zito v. Steeplechase Films, Inc.* 267 F.Supp.2d 1022, 1026 (N.D.Cal.2003). The court in *Zito* recently explained that principle:

> Even though [the definition of "publication"] does not explicitly require that the distribution of a copyrighted work be made under the authority of the copyright owner for a distribution to constitute publication, '[t]his, however, is undoubtedly implied. Congress could not have intended that the various legal consequences of publication under the current Act would be triggered by an unauthorized act of an infringer or other stranger to the copyright.' *Id.* (citing Nimmer, § 4.04 at 4–22 to 4–23).

In short, only the author (and those authorized by him or her) can cause a work to be published.

A contrary rule would mean that an author could never be certain whether his or her work had been published because anyone, even someone unknown to the author, could have published the work at any time. Such a result would comport with neither the intent of the exclusive rights granted to authors under 17 U.S.C. § 106(3) nor common sense. Thus, an unauthorized distribution will not create a "published" work for purposes of 37 C.F.R. § 202.3(b).

In this case, Cipes alleges that the photographs comprising the '991 Registration had not been licensed to Mikasa at the time when Mikasa distributed them. Because Mikasa was not authorized to distribute the photos, its distribution of them did not render them published for purposes of registration. Therefore, on the record before the Court, which is devoid of any evidence that Cipes distributed the subject photographs prior to registration, the photographs were properly registered as unpublished and summary judgment will be denied.

### ORDER

Based on and in accordance with the foregoing, Mikasa's Motions for Summary Judgment (Docket Nos. 37 and 39) are **DENIED**. Both parties have requested oral argument but, under the circumstances, those requests are **DENIED**.

**So ordered.**